IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHRISTOPHER SCOTT ATKINSON,

                                            OPINION AND ORDER

          Plaintiff,

                                                14-cv-736-bbc

    v.

FELIPA MACKINNON,
JOSEPH WARNKE AND
CRYSTAL SCHWERSENSKA,

          Defendants..

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this prisoner civil rights case, pro se plaintiff Christopher Atkinson contends that defendants Felipa MacKinnon, Joseph Warnke and Crystal Schwersenska (prison officials at the Federal Correctional Institution in Oxford, Wisconsin) discriminated against him because of his Muslim faith and then retaliated against him when he complained about his poor treatment. Plaintiff brings claims under the Religious Freedom Restoration Act, the free exercise clause, the establishment clause, the equal protection clause and the free speech clause.

Now before the court is defendants' motion for partial summary judgment on plaintiff's claim that defendants Warnke and Schwersenska violated his rights by changing his pay, job title, duties and hours at the prison. Dkt. #33. (Defendants refer to that claim as "Counts I-III" of plaintiff's complaint, but that is not a helpful designation in light of the

1

court's screening order, dkt. #9, which set forth plaintiff's claims without reference to "counts." In the future, the parties should use the screening order to frame plaintiff's claims.) Defendants argue that plaintiff failed to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e(a). Because I conclude that defendants have failed to meet their burden to prove that plaintiff failed to comply with § 1997e(a), I am denying defendants' motion.

BACKGROUND

In his complaint, plaintiff alleges that, in November 2013, he worked in food service at the Oxford prison. On November 12, 2013, one of plaintiff's supervisors in food service, defendant Joseph Warnke, observed plaintiff eating a chicken patty. Warnke asked plaintiff whether the chicken patty was a "Muslim thing," Plt.'s Cpt., dkt. #1, at 3, confiscated the patty and ordered plaintiff to stay away from food service for the rest of the day.

On November 13, 2013, defendant Warnke told plaintiff that "if [he] wanted to be treated like an American, [he] needed to remove [his] kufi' (Islamic Headdress)." Id. When plaintiff asked defendant Warnke what he had done to deserve the poor treatment, Warnke told plaintiff to "beat it . . . before we beat you down on your way to the shu (segregation)." Id. Later, defendant Crystal Schwersenska, another supervisor, informed plaintiff that she and defendant Warnke were "taking" plaintiff's job and grade and reducing his hours from 8 hours to 1.5 hours a day.

The same day, plaintiff submitted an administrative grievance in which he described

the events on November 12 and 13 and alleged that defendant Warnke was mistreating him because of his religious beliefs. He asked for "an investigation and correction." Dkt. #1-1 at 6. On November 19, 2013, plaintiff also attempted to resolve the issue informally with his counselor, but was unsuccessful. Id. at 7.

On November 27, 2013, the warden responded to plaintiff's November 13, 2013 grievance:

> This is in response to your Request for Administrative Remedy, receipted on November 13, 2013, wherein you allege you have been threatened and unfairly treated based on your religion. You request an investigation be conducted and corrective action taken.
>
> Your allegation of staff misconduct has been referred to the appropriate department for investigation.
>
> Accordingly, this response is for informational purposes only. In the event that you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of the date of this response . . . .

Decl. of Roberts, dkt. #35-2. Plaintiff did not appeal the response and received no further communications regarding the investigation.

In March 2014, plaintiff filed a second grievance in which he complained about unfair treatment because of his religion and retaliation for complaining. The warden, the regional director and the central office denied the grievance.

OPINION

A. Legal Background

The 1996 Prisoner Litigation Reform Act provides that "[n]o action shall be brought

with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of PLRA's exhaustion requirement is "[to] afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter v. Nussle, 534 U.S. 516, 525 (2002).

The exhaustion requirement is mandatory, Woodford v. Ngo, 548 U.S. 81, 85 (2006), and "applies to all inmate suits," Porter, 534 U.S. at 524. However, a prison must exhaust only remedies that are "available." Thomas v. Reese, 787 F.3d 845, 847 (7th Cir. 2015). In addition, a failure to exhaust administrative remedies under §1997e(a) is an affirmative defense that must be proven by the defendants. Jones v. Bock, 549 U.S. 199 (2007).

In order to properly exhaust his remedies, a prisoner must comply with the procedural requirements of the system in which the grievance is filed. Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002). Because plaintiff is an inmate at a federal correctional institution, the Bureau of Prisons' Administrative Remedy Program applies. 28 C.F.R. § 542.10 ("This Program applies to all inmates in institutions operated by the Bureau of Prisons.").

First, an inmate shall first present "an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13. Second, if the informal resolution is unavailing, the inmate must submit an Administrative Remedy Request, or BP-9, to the warden. 28 C.F.R. § 542.14.

Third, "[a]n inmate who is not satisfied with the Warden's response may submit an appeal (BP–10) to the appropriate regional director within 20 calendar days." 28 C.F.R. § 542.15(a). Finally, "[a]n inmate who is not satisfied with the Regional Director's response may submit an appeal (BP-11). . . to the General Counsel." Id.

## B. Merits

In their motion, defendants discuss plaintiff's November 2013 grievance and his March 2014 grievance. They assume that they cannot win their motion unless the court accepts their arguments regarding both grievances, so I will make the same assumption.

With respect to the November 2013 grievance, defendants argue that plaintiff did not comply with § 1997e(a) because he did not appeal the warden's decision to investigate the grievance. With respect to the March 2014 grievance, defendants raise two arguments: (1) the content of the grievance does not include the events from November 2013 but rather is about later alleged retaliation by defendant MacKinnon; and (2) a prisoner should not be permitted to "abandon[] an administrative grievance and fil[e] a new grievance months later." Dfts.' Br., dkt. #34, at 15. For the reasons discussed below, I am rejecting defendants' arguments regarding the November 2013 grievance, so I need not discuss the March 2014 grievance.

In defendants' opening brief, the substance of their argument regarding the November 2013 grievance was limited to two sentences: "Plaintiff alleged all of [the facts related to the incidents on November 12 and 13] in his November 13 BP-9 Form, yet voluntarily chose not

5

to pursue [that grievance] to completion in the administrative forum. As a result, Defendants are entitled to summary judgment on Counts I-III of the Complaint." Dkt. #34 at 14. Defendants did not argue that plaintiff's claim should be dismissed because plaintiff filed a grievance *before* seeking an informal resolution, presumably because the warden waived that argument by considering plaintiff's grievance on the merits. Maddox v. Love, 655 F.3d 709, 721-22 (7th Cir. 2011) ("Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense."). Defendants also did not argue that plaintiff's claim against Schwersenska should be dismissed because she was not mentioned in the grievance, so I do not consider that issue either.

In his opposition brief, plaintiff says that he had no reason to file an appeal because the warden gave him what he asked for, an investigation. In accordance with 28 C.F.R. § 542.15(a), he did not file an appeal because he was "satisfied" with the warden's response. Plaintiff cites Thornton v. Snyder, 428 F.3d 690 (7th Cir. 2005), for the proposition that a prisoner is not required to file an administrative appeal when he receives the relief he requests.

In their reply brief, defendants argue that it is irrelevant whether plaintiff was satisfied with the warden's response. Rather, they argue that both Thornton and Booth v. Churner, 532 U.S. 731 (2001), support a view that the prisoner must appeal a grievance if there is *any* additional relief that the prisoner could obtain on appeal. Defendants say that plaintiff could have received additional relief in the form of being reinstated to his previous job status and

6

pay grade, so he was required to appeal.

Even if I omit any consideration of the question whether plaintiff was subjectively satisfied with the warden's decision, defendants' argument that plaintiff should have filed an appeal despite a pending investigation defies common sense. It is true as defendants argue that it is theoretically possible that plaintiff could have received more relief on appeal, but this assumes that officials would simply accept plaintiff's version of events without making an independent determination for themselves. No reasonable prisoner would expect that and no reasonable prison official would want a prisoner to continue filing appeals while an investigation was pending. At that point, the grievance is serving the primary purposes of § 1997e(a), which are to give prison officials notice of the prisoner's problem and give them an opportunity to resolve it before a lawsuit is filed. Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532, 537-38 (7th Cir.1999).

By promising an investigation, the warden told plaintiff that his claim was being put on hold. Appealing the decision then would be like filing an interlocutory appeal before the trial court is finished with the case. In this way, the investigation is best viewed not as one of several remedies that plaintiff could obtain, but as a decision that plaintiff must wait for *any* remedy until the investigation is complete. Accordingly, I conclude that a prisoner does not have an "available" administrative remedy under § 1997e(a) while prison officials are promising to investigate his claim.

There may be a plausible argument that a prisoner should be required to file an appeal or a new grievance after officials complete their investigation if the prisoner does not get all

the relief he requests. Cf. Dixon v. Page, 291 F.3d 485, 490-91 (7th Cir. 2002) (under Illinois grievance rules, prisoner required to file new appeal when officials promise relief but fail to provide it). However, defendants do not raise that argument. In fact, defendants argue that plaintiff should have been barred from a filing a second grievance, so I decline to consider whether plaintiff was required to take additional action at a later date.

Case law supports a conclusion that a prisoner in plaintiff's situation is not required to pursue a grievance while an investigation is pending. For example, in Mocnik v. Williams, No. 06 C 191 C, 2006 WL 3538989, at *5 (W.D. Wis. Dec. 6, 2006), I concluded that the prisoner had no available administrative remedy when he "pursued his complaint until he was assured that prison officials would investigate his allegations, as he had asked them to do." Similarly, in Feliz v. Taylor, 2000 WL 1923506 at * 2 (E.D. Mich. 2000), the prisoner did not appeal a grievance because the examiner told him that the claim "is being investigated." In that situation, the court declined to dismiss the case for lack of exhaustion:

> [I]t is easy to understand why [the prisoner] did not request an appeal form. . . . At that time, plaintiff had every reason to believe that the MDOC was investigating his complaint of retaliation and that the outcome might be favorable to him. . . . [I]t would be unfair to now bar plaintiff from bringing this action on the grounds that he failed to pursue a timely administrative appeal when plaintiff had no reason to think an appeal was necessary at the time he received the MDOC's response to his Step I grievance. . . . Based on the MDOC's response to plaintiff's Step I grievance that an investigation of alleged wrongdoing was ongoing, plaintiff should not have been expected to treat that response as a final decision activating his appeal time.

Id. at *2-3. Finally, in Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002), the court held that a prisoner is not required to file a grievance when "he relie[s] to his detriment on the defendants' erroneous or misleading instructions that he must wait until the conclusion of an

investigation before pursuing formal remedies." Defendants cite no cases in which courts reached a contrary conclusion under similar circumstances.

The parties do not cite any decisions in which the Court of Appeals for the Seventh Circuit addressed the particular issue raised in defendants' motion. However, the court has stated in a number of different contexts that prisoners are not required to file a grievance or appeal when the reason for failing to do so is that the prisoner relied reasonably on representations made by prison officials. Thomas, 787 F.3d 845, 847-48 (prisoner not required to file grievance when officer told prisoner he could not file one); Swisher v. Porter County Sheriff's Dept., 769 F.3d 553, 555 (7th Cir. 2014) ("If you are an inmate and you speak to senior jail officers up to and including the Warden of the jail and are told not to file a grievance because the officers understand your problem and will resolve it without need for you to invoke the formal grievance procedure and they don't tell you how to invoke that procedure, you are entitled to assume that you don't have to file a written grievance."); Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004) (prisoner not required to file grievance when he did not have proper form and officer told him he could not file grievance without proper form). In addition, in Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006), when discussing examples in which a prisoner does not have an available administrative remedy, the court cited Brown, 312 F.3d at 111-12, which involved a prisoner who did not file a grievance because officials told him they were conducting an investigation.

From these cases, it is reasonable to infer that the court of appeals would not require plaintiff to file an appeal when he did not do so in reasonable reliance on the warden's

representation that officials would conduct an investigation. Any other reading would turn the grievance process into a game of "gotcha," allowing prison officials to obtain dismissal of a claim as unexhausted after lulling the prisoner into believing that he was not supposed to use the grievance process. That is not how § 1997e(a) works. Shaw v. Jahnke, 607 F. Supp. 2d 1005, 1010 (W.D. Wis. 2009) ("The grievance process is not intended to be a game of 'gotcha' or a test of the prisoner's fortitude or ability to outsmart the system.")

Neither Booth nor Thornton requires a contrary conclusion. In Booth, 532 U.S. at 734, the question was "whether an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money." The Court concluded that he did because "one 'exhausts' processes, not forms of relief," id. at 739, so the type of relief the prisoner wants is irrelevant so long as the prison can provide *some* relief. In addition, the Court saw nothing in the history of § 1997e(a) to suggest that Congress intended to allow prisoners to bypass the grievance process simply because they want a form of relief not available through that process.

Booth is not instructive because plaintiff is not seeking to avoid the grievance process simply because he does not like what the prisoner can offer him. In fact, his situation is the reverse. He decided not to appeal because he accepted defendants' resolution for his problem. Again, because the warden promised plaintiff an investigation, plaintiff had *no* "available" remedy at least until the investigation was finished.

In Thornton, 428 F.3d 690, a prisoner filed grievances about the condition of his cell and mattress. In response, officials transferred the prisoner to a new cell, provided a new

10

mattress and then dismissed the grievances as moot. Id. at 692-93. The prisoner did not appeal the decision administratively, but instead filed a lawsuit in which he sought money damages, which were not available through the grievance system. The court of appeals rejected the defendants' argument that the prisoner was required to appeal under those circumstances. Quoting Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), the court stated, "[w]hen there is no possibility of any further relief, the prisoner's duty to exhaust available remedies is complete." Defendants argue that plaintiff had the "possibility" of getting "further relief" on appeal, so Thornton supports their position. I disagree.

First, in Thornton, the court concluded that the prisoner did *not* have to file an appeal. The court did not decide the situations in which a prisoner *did* have to file an appeal, so any statements to that effect are dicta. More important, Thornton is not instructive for the same reason as Booth, which is that plaintiff believed reasonably that he had no available remedies while prison officials were conducting an investigation of his claim.

One final matter requires attention. In a footnote in their opening brief, defendants argue that defendant Schwersenska should have been dismissed from the case in the screening order. Dkt. #34 at 10 n.5. However, defendants do not develop an argument challenging my conclusion that plaintiff's allegations were sufficient to state a claim against Schwersenska for changing plaintiff's pay, job title, duties and hours. Accordingly, I decline to consider the argument now. Defendants are free to argue in a motion for summary judgment on the merits that plaintiff cannot prove his claim against Schwersenska.

ORDER

IT IS ORDERED that the motion for partial summary judgment filed by defendants Felipa MacKinnon, Joseph Warnke, and Crystal Schwersenska, dkt. #33, is DENIED.

Entered this 12th day of November, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge