IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHRISTOPHER SCOTT ATKINSON,

                Plaintiff,

        v.

FELIPA MACKINNON,
JOSEPH WARNKE and
CRYSTAL SCHWERSENSKA,

                Defendants.

OPINION and ORDER

14-cv-736-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this prisoner civil rights case, pro se plaintiff Christopher Atkinson alleges that defendants Felipa MacKinnon, Joseph Warnke and Crystal Schwersenska (prison officials at the Federal Correctional Institution in Oxford, Wisconsin) discriminated against him because of his Muslim faith and then retaliated against him when he complained about his poor treatment.  In particular, plaintiff is proceeding on the following claims: (1) defendants Warnke and Schwersenska violated his rights under the free exercise and establishment clauses of the First Amendment, the equal protection component of the Fifth Amendment and the Religious Freedom Restoration Act when they changed plaintiff's pay, job title, duties and hours; (2) defendant Mackinnon violated the free speech, free exercise and establishment clauses of the First Amendment, the equal protection component of the Fifth Amendment and RFRA by refusing to reinstate his job privileges, submitting poor work

performance evaluations of plaintiff and telling plaintiff that he must find new work.

Defendants have filed a motion for summary judgment, dkt. #45, which is ready for review. The primary issued raised in defendants' motion is whether they disciplined plaintiff because of an honest belief that he stole food from the prison kitchen or because plaintiff is a Muslim and filed grievances against defendants. Because I conclude that genuine issues of material fact remain on these questions, Fed. R. Civ. P. 56, I am denying defendants' motion.

After the parties finished briefing defendants' summary judgment motion, plaintiff filed several of his own motions: (1) a motion to supplement his responses to defendants' proposed findings of fact, dkt. #81; (2) two requests for a subpoena duces tecum for the Bureau of Prisons, dkt. ##83 and 86; and (3) a request to require the Bureau of Prisons to provide the court an unredacted copy of defendant Schwersenska's time and attendance report, dkt. #85. (In addition, plaintiff has filed a petition for a writ of habeas corpus ad testificandum with respect to prisoner Gregg Vandyke, dkt. #91, but defendants have not had the opportunity to respond to the request yet.)

In his motion to supplement his responses to defendants' proposed findings of fact, plaintiff says that he inadvertently failed to include one page of his responses when he submitted them to defendants and the court. Because defendants have not objected to plaintiff's motion, I will grant it. Further, because plaintiff submitted his proposed supplement with his motion, no additional action is needed.

I am denying both of plaintiff's subpoena requests because he has not shown that he

is entitled to the materials he is requesting.  Finally, I am granting plaintiff's request for an in camera inspection.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.

## UNDISPUTED FACTS

Plaintiff Christopher Atkinson is a federal prisoner incarcerated at the Federal Correctional Institution at Oxford, Wisconsin.  In November 2013, plaintiff worked in the prison's food services department as a "Grade 2" inmate worker.  He was assigned to the morning shift (4:30 a.m. to 12:30 p.m.), working on the serving line.

On November 12, 2013, defendant Joseph Warnke, a cook supervisor, confronted plaintiff about one or more chicken patties that plaintiff was holding.  (The parties dispute most of the details about this incident.  I will discuss the parties' different versions in the context of the opinion.)  The incident ended with Warnke confiscating the patty or patties and directing plaintiff to leave the food service area.  After defendant Warnke spoke to defendant Crystal Schwersenska, another cook supervisor, about what he had observed on November 12, Schwersenska reassigned plaintiff to a new position away from the food service line.  (The parties debate in their briefs and proposed findings of fact whether Schwersenska had authority to reassign plaintiff, but I need not resolve that dispute to decide defendants' motion. The parties do not identify what plaintiff's new position was.)

On November 13, 2013, plaintiff received a "poor" rating on a work evaluation on

3

the ground that he "grabbed a handful of chicken patties from the hotbox and took off with them." Dkt. #1-1 at 4.    (Defendants do not identify the person who gave plaintiff the negative evaluation.  Plaintiff alleges that defendant Felipa Mackinnon, the food services administrator, admitted that she was responsible. Cpt. ¶ 46, dkt. #1. )

Also on November 13, 2013, plaintiff submitted an administrative grievance in which he described the events on November 12 and 13 and alleged that defendant Warnke was mistreating him because of his religious beliefs.  In response, the warden stated that plaintiff's "allegation of staff misconduct has been referred to the appropriate department for investigation."

Soon after the incident, plaintiff requested a meeting with defendant Felipa Mackinnon, the food services administrator.  At the meeting, plaintiff denied stealing the chicken patties, but he did not accuse Warnke of making disparaging comments about the Muslim faith.  Mackinnon did not give plaintiff his old job back.

Plaintiff was scheduled to work fewer hours in his new position. In October 2013, plaintiff worked 147 hours.  In November 2013, he worked 74 hours.  He worked 20 hours each month from December 2013 to March 2014.  In April 2014, he worked 30 hours.  In May, June and July 2014, he worked 32 hours.  After that plaintiff received "maintenance pay" because he refused to participate in the "Financial Responsibility Program."  (Plaintiff does not allege that defendants were involved in that decision.)

In March 2014, plaintiff's "poor" rating was changed to "good" retroactively.   A notation on the unsigned evaluation form states that plaintiff "has a consistent institution

work history." (Defendants do not say who made the change or why. Plaintiff alleges that Mackinnon admitted that she was responsible for the retroactive changes, but she did not explain the reasons for them. Cpt. ¶ 46, dkt. #1. )

Plaintiff remained an employee in food services until March 2015, when the Special Investigative Services unit recommended a reassignment because of plaintiff's alleged involvement in making a threat to a coworker. (Plaintiff denies that he threatened anyone.) Neither defendants nor anyone else in food services participated in making the recommendation for reassignment.


OPINION

I. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants raise several arguments in support of their motion for summary judgment: (1) plaintiff's constitutional claims must be dismissed because plaintiff does not have the right to sue federal employees for damages under the First Amendment or Fifth Amendment; (2) plaintiff's claims under RFRA and the free exercise clause should be dismissed because defendants did not substantially burden plaintiff's religious exercise and their conduct furthered a compelling interest by the least restrictive means; (3) plaintiff's claims under the establishment clause and the equal protection component of the Fifth Amendment should be dismissed because defendants did not discriminate against plaintiff on the basis of his religion; and (4) plaintiff's retaliation claim against defendant Mackinnon should be dismissed because Mackinnon did not take any adverse actions against plaintiff and plaintiff

has no evidence of retaliatory intent.  In addition, defendants argue that plaintiff is not entitled to seek damages for mental or emotional injuries.   I will address each of these arguments in turn.  (Defendants discuss a retaliation claim against defendants Warnke and Schwersenska as well, but I did not allow plaintiff to proceed on such a claim, so I need not address it.)

## A.   Scope of Right to Sue for Constitutional Violations

If a state employee violates the Constitution, he may be sued for damages under 42 U.S.C. § 1983.  However, there is no federal statute that authorizes lawsuits for money damages against federal employees for constitutional violations.  In Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 389 (1974), the Supreme Court held that the Fourth Amendment implicitly authorizes a court to order federal agents to pay damages to a person injured by the agents' violation of the Amendment.  After Bivens, the Court authorized damages suits by federal prisoners brought under the Eighth Amendment, Carlson v. Green, 446 U.S. 14 (1980), and discrimination suits brought under the Fifth Amendment, Davis v. Passman, 442 U.S. 228 (1979).

Defendants argue that a damages remedy should not be recognized in this case for plaintiff's constitutional claims because the Supreme Court has been reluctant to extend Bivens in more recent years.  Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) ("Because implied causes of action are disfavored, the Court has been reluctant to extend Bivens liability to any new context or new category of defendants.") (internal quotations omitted).  However,

defendants do not attempt to distinguish Davis, 442 U.S. 228, in which the Court explicitly authorized a discrimination claim against federal officers under the Fifth Amendment.   The Court has not resolved the question with respect to First Amendment claims.   Wood v. Moss, 134 S. Ct. 2056, 2066 (2014) ("[W]e have several times assumed without deciding that Bivens extends to First Amendment claims. We do so again in this case.") (citation omitted).   However, as defendants acknowledge, the Court of Appeals for the Seventh Circuit has allowed federal prisoners to maintain First Amendment claims against federal officials.   E.g., Babcock v. White, 102 F.3d 267, 275 (7th Cir. 1996) (allowing prisoner to bring First Amendment retaliation claim under Bivens).   See also Herron v. Meyer, No. 15-1659, — F.3d —, 2016 WL 1622543, at *3 (7th Cir. Apr. 25, 2016) (reversing dismissal of First Amendment Bivens claim brought by prisoner).   Thus, until the court of appeals or the Supreme Court changes course, I will follow the practice of the court of appeals.

Defendants assume in their summary judgment submissions that plaintiff can recover damages for violations of RFRA, so I will do the same.


### B.   Claims against Joseph Warnke and Crystal Schwersenska

Plaintiff's claim against defendants Warnke and Schwersenska is that they reassigned him to a less desirable position with less pay and fewer hours because plaintiff is a Muslim. (Although plaintiff submitted no evidence with his summary judgment materials regarding his religious beliefs, defendants do not seek summary judgment on that ground, so I need not consider that issue.)   I allowed plaintiff to proceed under the First Amendment (free

exercise clause and establishment clause), the Fifth Amendment (equal protection component) and the Religious Freedom Restoration Act.   (In his summary judgment materials, plaintiff raises a new claim that, after he was reassigned, he was not paid for all the hours he worked.  Plt.'s Br., dkt. #66, at 6.  Because plaintiff did not include that claim in his complaint, he cannot raise it now.  Anderson v. Donahoe, 699 F.3d 989, 997 (7th Cir. 2012) ("[A] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.") (internal quotations omitted).)

Plaintiff's claim is one of religious discrimination.  Whether that claim is analyzed under the First Amendment or the Fifth Amendment, the key question is the same, which is whether defendants treated plaintiff unfavorably because of his religion.  Ajala v. West, 106 F. Supp. 3d 976, 989 (W.D. Wis. 2015); Goodvine v. Swiekatowski, No. 08–cv–702–bbc, 2010 WL 55848, *3 (W.D. Wis. Jan. 5, 2010).

On its face, RFRA imposes a different standard: "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C.A. § 2000bb-1(b).  In the screening order, I assumed that a "substantial burden" could include not only direct restrictions on a prisoner's religious exercise but also adverse acts taken against a prisoner because of his religious exercise.  Neither side challenges this assumption in the summary judgment submissions, so I see no reason to revisit the issue.  Defendants challenge various ways that plaintiff alleges that defendants' alleged discrimination inhibited

8

his religious exercise, Dfts.' Br., dkt. #46, at 21-23, but I understand defendants' argument to be that any changes by plaintiff were "self-imposed" and therefore irrelevant to his claim because defendants' conduct was not religiously motivated.  Thus, for the purpose of defendants' motion for summary judgment, the key question for all of plaintiff's claims against defendants Warnke and Schwersenska is whether a reasonable jury could find that those defendants removed him from his job because of his religion.  As with any other claim of discrimination, it is not enough for plaintiff to show that defendants made a mistake.  If defendants had an honest belief that there were legitimate reasons to reassign plaintiff, they cannot be held liable.  Simpson v. Beaver Dam Community Hospitals, Inc., 780 F.3d 784, 797 (7th Cir. 2015).

The parties tell very different stories regarding why plaintiff lost his job.  According to defendants in their proposed findings of fact, on November 12, 2013, defendant Warnke and another employee, Kirk Kangas, were supervising the main line lunch service in the food services department.  Dfts.' PFOF ¶¶ 77-78. dkt. #78.  Near the end of the lunch service, Kangas observed plaintiff closing the door to a hotbox and turning away toward the adjacent dish washing room hallway with his hands covering his stomach.  Id. at ¶ 79.  Plaintiff ignored repeated orders by Kangas to stop walking.  Id. at ¶ 81.  Kangas motioned to Warnke to follow plaintiff.  Id. at ¶ 87.  When Warnke walked into the dishwashing room, he discovered plaintiff in possession of "three or four" chicken patties, which plaintiff was attempting to place in plastic gloves.  Id. at ¶ 88.  Defendant Warnke spoke to defendant Crystal Schwersenska, another cook supervisor, about what he observed.  Id. at ¶¶ 97-99.

They concluded that plaintiff had been attempting to steal chicken patties from the hotbox. As a result, Schwersenska reassigned plaintiff to a new position away from the food service line. Id. at ¶ 102.

This account bears little resemblance to the one in plaintiff's verified complaint, which is admissible evidence in the context of a summary judgment motion. Devbrow v. Gallegos, 735 F.3d 584, 587 (7th Cir. 2013). Plaintiff says that, on November 12, 2013, at the end of lunch of service, he was socializing with friends in the dining area because he had finished all of his work. Dkt. #1 at ¶13. He began eating a single chicken patty that had been rationed to him earlier that morning. Id. at ¶ 14. (Defendants say that a prisoner who received his lunch earlier should not be in possession of food service items during a later lunch service, Dfts.' PFOF ¶ 66, dkt. #78, but they cite nothing but their own say-so for that rule and they do not argue that plaintiff would have lost his job for eating his lunch at the wrong time. Accordingly, defendants are not entitled to summary judgment on that ground.) When defendant Warnke saw what plaintiff was doing, he asked plaintiff whether chicken was "also a Muslim thing." Id. at 15. When plaintiff did not respond, Warnke asked plaintiff where he had gotten the chicken. Id. at ¶ 16. Plaintiff told Warnke that the chicken had been rationed to him at lunch. Id. Warnke took the patty and told plaintiff to leave. Id.

The following day, plaintiff says, he returned to work wearing a kufi, which is a religious head covering worn by Muslims. Id. at ¶ 21. Warnke accused plaintiff of stealing chicken patties the previous day. Id. at ¶ 20. In addition, Warnke told plaintiff that, "if

[he] wanted to be treated like an American, [he] needed to remove [his] kufi." Id. at ¶ 21. When plaintiff refused to remove his kufi, Warnke told plaintiff to "beat it . . . before we beat you down on your way to" segregation.  Id. at ¶ 22.

Later, defendant Warnke and defendant Schwersenska told plaintiff that they were giving him a different job, reducing his pay grade and reducing his hours from 8 hours a day to 1.5 hours a day.  Id. at ¶ 24.  At the same time, Warnke stated, "Now that's American justice.  Down with funny hats and shariah law."  Id. at ¶ 26.

In context of a motion for summary judgment, I must accept plaintiff's version of the facts as true.  Loudermilk v. Best Pallet Co., LLC, 636 F.3d 312, 314-15 (7th Cir. 2011) ("When ruling on a motion for summary judgment, the party opposing the motion gets the benefit of all facts that a reasonable jury might find.").  This means I must accept his allegations that defendants are lying (and not just mistaken) about defendant Warnke's catching plaintiff trying to put multiple patties in plastic bags in the dishwashing room.  I must also accept his allegations that defendant Warnke made multiple derogatory statements about plaintiff's religion around the time of the disciplinary decision.  These allegations are sufficient to allow a reasonable jury to find that defendants changed plaintiff's job because of his religion rather than because of an honest belief that plaintiff stole anything.  Simple v. Walgreen Co., 511 F.3d 668, 671 (7th Cir. 2007) (evidence that defendant lied about reasons for firing employee is evidence of discrimination); Hemsworth v. Quotesmith.Com, Inc., 476 F.3d 487, 491 (7th Cir. 2007) (discriminatory comments made by decision maker around time of adverse action support finding of discriminatory intent).

A potential wrinkle in plaintiff's claim is that defendant Warnke made the allegedly discriminatory comments but defendants say that Schweresenska made the decision to reassign plaintiff.  However, this does not mean that plaintiff is barred from proceeding against either defendant.

With respect to defendant Warnke, a person who influences a decision can be held liable for a constitutional violation, even if he is not the final decision maker.  Jones v. City of Chicago, 856 F.2d 985, 993-94 (7th Cir. 1988); Johnson v. Johnson, 385 F.3d 503, 527 (5th Cir. 2004).)  Because it is undisputed that Schwersenska relied on Warnke's input in making her decision, Warnke can be held liable.

With respect to defendant Schwersenska, even if Warnke had discriminatory intent, Schwersenska cannot be held liable unless her decision was motivated by her own discriminatory beliefs.  Ashcroft, 556 U.S. at 676-77; Wilson v. Greetan, 571 F. Supp. 2d 948, 955 (W.D. Wis. 2007).  Plaintiff does not allege that Schwersenska made derogatory comments about Muslims, as Warnke allegedly did.  However, plaintiff alleges that Schwersenska was present when Warnke allegedly said "down with funny hats and shariah law" and that the decision to remove plaintiff from his job was "American justice."  In addition, plaintiff cites a declaration from another prisoner, who avers that, several days later, Schwersenska was present again when Warnke said to plaintiff, "[i]f I told you once, I have told you a thousand times to take off that stupid hat [plaintiff's kufi] if you want us to treat you like an American."  Vandyke Decl. ¶¶ 1-4, dkt. #69.  After plaintiff asked to be left alone, Schwersenska told plaintiff to "wise up" and "find another job."  Id. at ¶ 7.  If

12

plaintiff's testimony is true, then Schwersenska not only failed to object to Warnke's discriminatory comments, but she also demonstrated implicit support for them by telling plaintiff immediately after one of those comments to find another job.   Accordingly, I conclude that a reasonable jury could infer that Schwersenska agreed with Warnke's statements and that the anti-Muslim views in those statements motivated Schwersenska's decision to reassign plaintiff.   Cf. Smith v. Bray, 681 F.3d 888, 906-07 (7th Cir. 2012) ("If [the defendant] had stood idly by while [the plaintiff] complained to her of race discrimination, this might provide evidence of her own discriminatory animus.").

In addition to his and Vandyke's testimony, plaintiff relies on discrepancies in defendants' account of the incident.   Greengrass v. International Monetary System Ltd., 776 F.3d 481, 487 (7th Cir. 2015) ("weaknesses, implausibilities, inconsistencies, or contradictions in an employer's asserted reason for taking an adverse employment action" are evidence of discrimination).   For example, in a response to one of plaintiff's grievances, defendants stated that plaintiff was observed with multiple chicken patties *before* he went into the dishwashing room and was then seen with only one chicken patty when he came out.   There was no mention of anyone following plaintiff into the dishwashing room.   Dkt. #35-3 at 8.   This is significantly different from defendants' story now, which is that no one saw plaintiff with chicken patties before he entered the dishwashing room but that defendant Warnke followed plaintiff into the dishwashing room and then personally observed plaintiff with three or four chicken patties.

Plaintiff also notes that defendants departed from the usual way of handling alleged

13

misconduct by a prisoner in the food services department.  According to plaintiff, the general practice was to give the prisoner a choice: agree to leave the job on his own or be subject to formal disciplinary proceedings.  Cpt. ¶ 25, dkt. #1; Plt's Resp. to Dfts. PFOF ¶¶ 37, 52, dkt. #78.  In this case, defendants simply reassigned plaintiff without giving him the choice.

Defendants do not deny that they departed from the usual practice, but they argue that doing so is not probative of discrimination because the informal discipline they chose was more lenient than a formal incident report, which could have led to even harsher punishment, such as placement in segregation.  I agree with defendants that plaintiff's evidence on this point is not helpful to show that other prisoners accused of misconduct were treated more favorably than he was.  However, this evidence is relevant to another issue, which is pretext.  Hobgood v. Illinois Gaming Board, 731 F.3d 635, 645 (7th Cir. 2013) (departure from usual practice is evidence of pretext and discriminatory intent).  I understand part of plaintiff's theory to be that defendants did not give him a choice because they wanted to remove plaintiff from his job but they knew that their allegations against him would not hold up under the scrutiny required by formal disciplinary proceedings.  In any event, the fact that defendants departed from their usual practice is a relevant piece of evidence that may be considered at trial.

Finally, with respect to plaintiff's RFRA claim, defendants raise an alternative argument that their actions furthered a compelling government interest by the least restrictive means.  In particular, defendants argue that they have a compelling interest in preventing and deterring theft.  However, that argument obviously is contingent on a finding

14

that defendants honestly believed that plaintiff attempted to steal chicken patties. Defendants are not arguing that they have a compelling interest in fabricating an allegation of theft because of animus against Muslims. Because the reasons defendants disciplined plaintiff are genuinely disputed, I cannot grant defendants' motion for summary judgment on this ground.

### B. Claims against Defendant Felipa MacKinnon

Plaintiff alleges that defendant Mackinnon refused to reinstate his job privileges, gave him poor work performance evaluations, told him that he must find new work and barred him from receiving promotions because of his religious beliefs and because he complained about the treatment he received from defendants Warnke and Schwersenska. I allowed plaintiff to proceed on claims under the free speech clause, the free exercise clause and establishment clause of the First Amendment, the equal protection component of the Fifth Amendment and RFRA.

I am dismissing plaintiff's claims under the free exercise clause, the establishment clause, the equal protection component of the Fifth Amendment and RFRA because plaintiff has not cited any evidence that defendant Mackinnon discriminated against him because of his religious beliefs. Plaintiff does not allege that Schwersenska made any disparaging comments about his faith or engaged in any other behavior that supports the drawing of an inference of religious discrimination. In fact, it is undisputed that, when plaintiff met with Mackinnon, he did not even tell her about the discriminatory statements allegedly made by

15

the other defendants. Plt.'s Resp. to Dfts.' PFOF ¶ 114, dkt. #78.

I reach a different conclusion with respect to plaintiff's claim under the free speech clause. In his verified complaint, plaintiff alleges that, when he met with Mackinnon, she told him that the complaint he made against defendants Warnke and Schwersenska was "a problem" and that, because of these complaints, plaintiff needed to find a job outside food service. Cpt. ¶ 31, dkt. #1. If true, these allegations are sufficient to allow a reasonable to jury to find that Mackinnon retaliated against plaintiff for exercising his right to free speech. Defendants' only argument to the contrary is that plaintiff's allegation is "dubious" because Mackinnon never forced plaintiff to leave food services. Dfts.' Br., dkt. #46, at 33. It is true that plaintiff continued working in food services, but this does mean necessarily that Mackinnon did not make the alleged statements. It is well established that a court may not make credibility determinations on a motion for summary judgment, even if the court believes that one's side story is more persuasive than the other's. Miller v. Gonzalez, 761 F.3d 822, 827 (7th Cir. 2014); McCann v. Iroquois Memorial Hospital, 622 F.3d 745, 752 (7th Cir. 2010). Thus, defendants' argument regarding Mackinnon's intent is better directed to the jury.

Alternatively, defendants argue that plaintiff has not identified a way in which Mackinnon harmed him. In particular, defendants argue that Mackinnon's alleged statement to find other work, the negative work evaluations and the refusal to reinstate plaintiff to his former position would not deter a person of ordinary firmness from exercising his rights, which is the standard for maintaining a claim for retaliation under the First

Amendment.  Bridges v. Gilbert, 557 F.3d 541, 552 (7th Cir. 2009) (applying standard in prison context).

It is not clear why defendants raised this argument with respect to plaintiff's claims against defendant Mackinnon but not with respect to plaintiff's claims against the other two defendants.  Many of the alleged harms are the same for both claims.  In any event, defendants have not shown that they are entitled to summary judgment on this ground.

With respect to plaintiff's job reassignment, defendants make the following argument:

> Plaintiff was not denied prison employment or terminated from Food Service after the November 2013 incident. To the contrary, Plaintiff was merely reassigned to a new Food Service position away from where the incident occurred. Defs.' PFOF ¶ 102. He did not lose his Grade 2 pay level. Id. ¶¶ 104-105. His new position initially had fewer hours due to position availability, but those soon began to increase until he was placed on Maintenance Pay. Id. ¶ 26, 124.

Dfts.' Br., dkt. #46, at 31.

There are two problems with this argument.  First, the prison's records provide inconsistent answers with respect to the question whether plaintiff's rate of pay was reduced. Defendants cite a record called "Inmate Transactions History Report," which shows that plaintiff's pay rate was $.29 an hour from October 2013 to July 2014, dkt. #48-1 at 2, suggesting that defendants are correct.  However, plaintiff cites a written statement from defendant Mackinnon that plaintiff's pay grade "was justly removed" because plaintiff stole chicken patties and because plaintiff disobeyed a supervisor's order to stop.  Dkt. #35-3. Neither side cites evidence showing the actual amount of money that plaintiff was paid at the relevant time, so I cannot resolve this issue as a matter of law.

17

Second, it is undisputed that plaintiff's hours were reduced significantly as a result of the reassignment. According to defendants' own record, plaintiff worked 147 hours in October 2013, 74 hours in November 2013 and 20 hours from December 2013 through March 2014. Dkt. #48-1. Although plaintiff began receiving more hours in April 2014 and subsequent months, he never worked more than 32 hours, which is obviously significantly less than 147 hours. Thus, regardless of the rate of pay that plaintiff received, the reassignment led to a significant reduction in plaintiff's wages. Not surprisingly, a significant reduction in pay may be sufficiently adverse to sustain a civil rights claim. E.g., Alexander v. Casino Queen, Inc., 739 F.3d 972, 980 (7th Cir. 2014). Because defendants do not identify any reason that a different result should apply in this case, I decline to grant defendants summary judgment on this ground. Further, because I conclude that the reduction in pay may be sufficient on its own to deter a person of ordinary firmness from exercising his rights, it is unnecessary to decide whether the other alleged adverse actions are sufficient as well.

Finally, defendants argue that plaintiff cannot prevail on his retaliation claim because *he* was not deterred from exercising his rights. Rather, he continued to file grievances and lawsuits after the alleged retaliatory acts. Defendants' argument is a nonstarter because "[t]he question is not whether plaintiff has been deterred or is likely to be, it is whether plaintiff's injury was 'so trivial that a person of ordinary firmness would not be deterred from' exercising his constitutional rights." Jackson v. Thurmer, 748 F. Supp. 2d 990, 1003 (W.D. Wis. 2010) (quoting Pieczynski v. Duffy, 875 F.2d 1331, 1333 (7th Cir.1989). In

18

other words, the standard is objective, not subjective.  Thus, whether plaintiff was deterred is not dispositive.  Accordingly, I am denying defendants' motion for summary judgment as to defendant Mackinnon.

### C.  Damages for Mental or Emotional Injuries

Under 42 U.S.C. § 1997e(e), a prisoner cannot recover damages for mental or emotional injuries unless he proves a physical injury as well.  Because it is undisputed that plaintiff did not suffer a physical injury as a result of the events relevant to this case, I agree with defendants that plaintiff is not entitled to seek damages for emotional distress.

### II.  PLAINTIFF'S MOTIONS

### A.  Renewed Subpoena Request

In an order dated February 22, 2016, I granted plaintiff's request under Fed. R. Civ. P. 45 for subpoenas to obtain several categories of documents from nonparty Federal Bureau of Prisons.   One of plaintiff's requests was for "[a]ll of Plaintiff's FCI Food Service Job Orientation, Training and Job Descriptions from Jan 2013 to March 2015."

In his renewed request, plaintiff says that the court failed to specify in the order that the bureau should provide copies of particular documents that plaintiff had signed and received.  Plaintiff wants the court to issue a new subpoena for those documents.  In response to plaintiff's first new request, the bureau says that it has no documents responsive to the request that they have not already produced.  Accordingly, I am denying this request

as moot.

### B. In Camera Review

Plaintiff's second motion relates to a subpoena request as well. In the February 22, 2016 order, I issued a subpoena for "[a]ll time and attendance work records at FCI Oxford on November 12, 2013 in relation to defendant Crystal Schwersenska." However, I instructed the bureau that it may redact any personal or sensitive information that is unrelated to defendant Schwersenska's work assignment and work schedule on November 12.

In his motion, plaintiff says that the bureau may have redacted information that is relevant to his claim and he would like the court to review an unredacted copy of the document. In particular, plaintiff says that he believes that redacted accounting codes could confirm whether Schwersenska was in the food services department on November 12, 2013, as defendants say she was. (Plaintiff believes that she was not there and that Warnke is fabricating the conversation he says he had with her on November 12 about plaintiff.)

Defendants do not argue that the information plaintiff wants is irrelevant. Further, in a letter to plaintiff, the bureau admits that the accounting codes "reflect[] the department from which the employee was paid for the day or days in question." Dkt. #87-1. Because the bureau says that it has no objection to providing the court an unredacted copy, I will direct it do so. In addition, the bureau should provide any documents necessary to interpret the codes. After reviewing the unredacted documents, I will determine at the final pretrial

conference or earlier whether the codes are probative of any issues in this case.

## C.  New Subpoena Request

In plaintiff's new subpoena request, he asks for an order allowing him to "measure and photograph property, designated objects and operations on it," "produce and preserve for inspection and trial surveillance camera recordings of the FCI Oxford Food Service Service-Line, during normal week day operations of main line lunch service for inmate general population" and "make [im]mediate arrangements for plaintiff to take up to five photographs of the east side FCI Oxford Food Service Service line with the plaintiff's specification for angles from which photos are taken."  Dkt. #86.

I am not persuaded that plaintiff is entitled to the relief he seeks.  With respect to the surveillance cameras, plaintiff does not say that he is asking for recordings from November 12, 2013.  According to the bureau, "no surveillance footage exists from that date."  Dfts.' Br., dkt. #88, at 3.  To the extent that plaintiff wants current footage, he does not say why. Plaintiff says generally that the footage could help him rebut defendants' testimony regarding what they allegedly observed in food services on November 12, 2013, but he does not say *how* it would help him.   In particular, plaintiff points to no testimony from defendants that the requested footage would rebut.  In addition, plaintiff does not offer a way to address the bureau's security concerns.  The bureau says that "[t]he existence, location, angle, and technical capabilities of surveillance cameras are closely guarded secrets. If disclosed to the prison population, inmates could use the information to circumvent

surveillance cameras, thereby decreasing the ability of FCI Oxford personnel to monitor inmate behavior." Dfts.' Br., dkt. #88, at 4. This is a legitimate concern. Thus, without a showing by plaintiff that he needs the footage to prove his case, I decline to issue the subpoena.

Plaintiff's request to take photographs raises similar issues. Again, plaintiff does not explain how the photographs would help him prove his case in any specific way. In any event, plaintiff does not allege that he owns a camera or could obtain one on his own. Rather, as I understand the request, plaintiff wants the court to order the bureau to provide a camera to him and develop the pictures for him. However, as the bureau points out, Fed. R. Civ. P. 45 does not require a nonparty to create new documents or provide equipment to a litigant. Accordingly, I am denying this request as well.

Finally, with respect to plaintiff's request to inspect and measure the area, again, plaintiff does not explain how that will help him, so I decline to order it. However, the bureau says that it "does not object to Plaintiff inspecting and measuring the immediate area surrounding the East Serving Line," Dfts.' Br., dkt. #88, at 4, so plaintiff can make that request directly to the bureau.

ORDER

IT IS ORDERED that

1. The motion for summary judgment filed by defendants Felipa MacKinnon, Joseph Warnke and Crystal Schwersenska, dkt. #45, is GRANTED with respect to the issue

22

whether plaintiff Christopher Atkinson may recover damages for mental or emotional injuries. The motion is DENIED in all other respects.

2.  Plaintiff's motion to supplement his responses to defendants' proposed findings of fact, dkt. #81, is GRANTED as unopposed.

3.  Plaintiff's requests for subpeonas, dkt. ##83 and 86, are DENIED.

4.  Plaintiff's request for an in camera inspection, dkt. #85, is GRANTED.  The Federal Bureau of Prisons may have until June 6, 2016, to provide the court an unredacted copy of dkt. #85-1, exh. 2, along with any documents necessary to interpret the exhibit.  The bureau may file the document ex parte and under seal.

Entered this 18th day of May, 2016.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge