IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHRISTOPHER SCOTT ATKINSON,

                Plaintiff,

    v.

FELIPA MACKINNON,
JOSEPH WARNKE and
CRYSTAL SCHWERSENSKA,

                Defendants.

OPINION and ORDER

14-cv-736-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Christopher Scott Atkinson is proceeding on the following claims: (1) (1) defendants Joseph Warnke and Crystal Schwersenska removed plaintiff from his prison job at the Federal Correctional Institution in Oxford, Wisconsin because plaintiff is a Muslim, in violation of his rights under the free exercise and establishment clauses of the First Amendment, the equal protection component of the Fifth Amendment and the Religious Freedom Restoration Act; (2) defendant Felipa Mackinnon retaliated against plaintiff, in violation of his right to free speech, because he complained about defendants Warnke's and Schwersenska's alleged mistreatment.  Trial is scheduled for July 25, 2016.

      Several motions filed by plaintiff are before the court: (1) a petition for a writ of habeas corpus ad testificandum with respect to Gregg Vandyke, dkt. #91; (2) two requests for the issuance of a subpoena duces tecum under Fed. R. Civ. P. 45, dkt. #98 and 106; and

(3) a request for a subpoena to compel Kevin Garska, a prison employee, to testify, dkt. #115. For the reasons explained below, I am denying all of plaintiff's requests.

In addition to these motions, plaintiff has filed requests for the appearance of two other prisoner witnesses, dkt. ##108 and 110, but the parties are still briefing those requests. Although plaintiff has not yet filed a reply brief in support of his request to compel Garska to testify, I need not wait to issue a ruling because it is clear from the face of the request that plaintiff is not entitled to a subpoena at this time.

Finally, earlier today defendants filed a motion for leave to file a surreply reply brief with respect to plaintiff's petition for a writ of habeas corpus ad testificandum for Gregg Vandyke. Dkt. #120. I am denying that motion as moot because I did not need to consider the surreply brief to decide the petition.

OPINION

A. Witness Gregg Vandyke

According to declarations submitted by both plaintiff and Gregg Vandyke, Vandyke was a prisoner at the Federal Correctional Institution in Oxford, Wisconsin during the time of some of the events relevant to this case. Dkt. ##92 and 93. Like plaintiff, Vandyke worked in food services. Vandyke says that he overheard defendant Warnke make discriminatory comments to plaintiff.

Plaintiff says that Vandyke is now living at a halfway house in Grand Rapids, Michigan. Plaintiff asks the court to issue a writ of habeas corpus ad testificandum

2

"directing the Executive Officer of the Community Alternatives Program to arrange [a] video conference trial appearance or deliver custody of Gregg Vandyke to the United States Marshal to bring Vandyke to" trial.

In response, defendants argue that plaintiff's request does not comply with the court's procedures, which require a party requesting a writ of habeas corpus ad testificandum to show that the proposed witness has agreed to testify voluntarily. Preliminary Pretrial Conference Packet at 25-26, dkt. #31. Without this showing, the party must comply with the requirements for issuing a subpoena. Id. at 27-28. One of those requirements is that the individual being served with the subpoena must live within 100 miles of the courthouse or within the same state. Fed. R. Civ. P. 45(c)(1). Because Vandyke is in Grand Rapids, Michigan, he is outside this court's subpoena power. Although plaintiff suggests testimony by video as an alternative, defendants cite Roundtree v. Chase Bank USA, N.A., No. 13-239 MJP, 2014 WL 2480259, at *2 (W.D. Wash. June 3, 2014), and Ping-Kuo Lin v. Horan Capital Management, LLC, No. 14 CIV. 5202 LLS, 2014 WL 3974585, at *1 (S.D.N.Y. Aug. 13, 2014), for the proposition that a party cannot avoid the geographic limitations of Rule 45 by requesting video testimony as a substitute.

I agree with defendants that plaintiff has not shown that Vandyke has agreed to testify for him. The declaration from Vandyke that plaintiff submitted says nothing about testifying at trial. In his own declaration, plaintiff says that it "took [him] two years to convince Vandyke" to provide a declaration and that Vandyke "only agreed to [do so] after he naively stated and believed that leaving Wisconsin would eliminate him from any further

3

involvement." That statement suggests strongly that Vandyke has no interest in testifying at trial.

In his reply brief, plaintiff attempts to modify his statement, saying that it is his "understanding" that "Vandyke thought that it was totally up to the Bureau of Prisons if he could travel back to Wisconsin and testify in a civil case against prison staff, Vandyke was naively unaware of the court's subpoena power in this civil action." That statement still does not support a view that Vandyke agreed to testify. Rather, it is simply an explanation as to why he believed he would not have to do so.

In another part of his reply brief, plaintiff says expressly that Vandyke agreed to testify for him, but the only evidence he cites in support of that statement is a list of telephone numbers and addresses that plaintiff says belong to Vandyke's friends and family. The document does not include any agreement by Vandyke. Perhaps more important, plaintiff's new representation is inconsistent with his earlier statement that Vandyke would not have agreed to submit his declaration if he believed that he would be required to participate further in the case. Plaintiff does not provide a persuasive explanation for the inconsistency and he does not explain why he omitted from his opening brief Vandyke's alleged agreement to testify. Under these circumstances, plaintiff needed to provide clearer evidence of the alleged agreement.

Plaintiff does not respond to defendants' argument that he is not entitled to a subpoena, so he has forfeited that issue. Accordingly, I am denying plaintiff's request for a writ of habeas corpus ad testificandum as to Gregg Vandyke. Of course, plaintiff is free to

4

testify about his own recollection of what defendants said to him.

### B. Inmate Skills Development System

Plaintiff seeks a subpoena compelling the Bureau of Prisons to "produce defendant Schwersenska's submission of Inmate Atkinson's poor performance rating [that] Schwersenska entered into the Inmate Skills Development System (ISDS) on 11-13-2013." In response, the bureau argues that plaintiff has not shown why he needs that information to prove his claim. Despite this objection, plaintiff did not file a reply brief, even though he had the opportunity to do so. Because I agree with the bureau that plaintiff has not demonstrated the relevance of his request to proving his claims, I am denying the request.

### C. Video Surveillance and Photographs

Plaintiff's third motion has two components. First, plaintiff says that he wants the court to issue a subpoena directing the Federal Bureau of Prisons to "produce at least 10 minutes of surveillance camera recording of the FCI normal and typical food service service-line operations during lunch hour, showing food distribution to the inmate general population." (It is undisputed the bureau does not have any footage from the date of the incident at issue in this case. Rather, plaintiff is seeking footage from another date simply to show how the area is laid out.) Second, plaintiff wants the court to direct the bureau to allow plaintiff to use the prison's "Commissary Photo Project" to take pictures of the food services area. I am denying both requests.

Plaintiff says that the surveillance footage is relevant to discredit the testimony of defendant Warnke and Kirk Kangas (another food services supervisor) regarding their allegations that plaintiff stole several chicken patties from the kitchen. In his summary judgment declaration, Kangas averred that he saw plaintiff close the door to a hotbox near the serving line in the dining area and then walk toward the dishwashing room with his hands covering his stomach as if he were hiding something. Dkt. #53 at ¶ 16. Although Kangas told plaintiff to stop, plaintiff continued to walk into the dishwashing room. Id. at ¶ 17. Kangas did not want to leave his post, so he "signaled" to Warnke, who was also in the dining area, to follow plaintiff. Id. at ¶ 18.

In his declaration, Warnke stated that he was standing "next to a hallway leading into the dish washing room" when he heard Kangas telling plaintiff to stop as he walked toward that room. Dkt. #52 at ¶¶ 4, 6. When Kangas signaled Warnke to follow plaintiff, Warnke complied. Id. at ¶¶ 7-8. Once in the dishwashing room, Warnke observed plaintiff attempting to place three or four chicken patties into plastic hand gloves. Id. at ¶ 8.

Plaintiff disputes Warnke's and Kangas's version of events. In his motion, plaintiff says that video footage of the dining area will show that he "would have been trapped between two prison guards while being ordered to stop and plaintiff would have come within two feet of prison guard Warnke when plaintiff passed Warnke in order to enter the dish room." Dkt. #106 at ¶ 4. In other words, plaintiff believes the video will show that, if Warnke's and Kangas's testimony were true, Warnke would have been able to stop plaintiff easily before he reached the dishwashing room. In addition, plaintiff says the footage will

6

show that Kangas could have left his post to follow plaintiff because Warnke had "an equal or likely better view of the service line." Id. at ¶ 6.

Plaintiff's argument that he needs the video footage is not persuasive because his description of what the video footage will show does not contradict anything that Kangas or Warnke said in their declarations. As noted above, defendant Warnke admits that he was standing next to the hallway leading to the dishwashing room, which means he admitted that plaintiff would have had to walk right by him if Warnke's and Kangas's account is true. It may seem unlikely that Warnke would not have stopped plaintiff if Kangas had been calling after plaintiff, but that is an argument that plaintiff can make to jury on the basis of the testimony itself. The video footage would not make Warnke's and Kangas's version of events more or less plausible.

With respect to plaintiff's argument that Kangas could have left his post because Warnke had a good view of the service line, again, the video footage would not be helpful. Kangas did not say in his declaration that he declined to leave his post because he believed that he could monitor the service line better than Warnke. Rather, Kangas said that he did not want to leave because he was "the Cook Supervisor assigned to the serving line." Dkt. #53 at ¶ 15. Thus, even if video footage showed that Warnke could have monitored the line just as well as Kangas, it would not undermine Kangas's testimony.

In sum, plaintiff has not shown that the probative value of the video footage outweighs the bureau's concerns that disclosing the footage to plaintiff would reveal information (such as the capabilities of the surveillance cameras) that could undermine

security at the prison. Accordingly, I decline to issue the requested subpeona.

In the alternative, plaintiff asks the court to direct the bureau to allow him to take and develop photographs of the dining area. (Neither side discusses whether the defendants or the bureau already possesses photographs of the dining area, so I do not consider whether plaintiff would be entitled to those.) Plaintiff does not have a camera, but he cites a policy regarding the bureau's "Commissary Photo Project," which allows prisoners to take photographs using prison equipment under some circumstances. Dkt. #88-1. He wishes to purchase up to five "photo tickets" under that project for the purpose of photographing the dining area.

As I informed plaintiff in a previous order, Fed. R. Civ. P. 45 does not give a court authority to order a party to lend its equipment for use by another party. Plaintiff is free to ask prison officials for permission to use a government-owned camera, but the bureau says that plaintiff's request falls outside the scope of the Commissary Photo Project. I have no authority to dictate the way the prison officials apply their own policy.

D. Witness Kevin Garska

Plaintiff requests a subpoena for Kevin Garska, an employee at the Oxford prison who responded to an informal grievance that plaintiff filed in this case. In his written response, Garska relayed a statement from defendant Mackinnon that plaintiff believes is inconsistent with statements that Mackinnon made in her summary judgment submissions. Plaintiff wishes to call Garska to testify about those statements.

I am denying the request because plaintiff asks the court to waive the witness fee, something the court does not have the authority to do. McNeil v. Lowney, 831 F.2d1368, 1373 (7th Cir.1987). If plaintiff wishes to subpoena Garska, he will need to submit the witness fee, which defendants calculate as $115.70. I need not decide at this time whether Garska's written response might be admissible under an exception to the hearsay rule even without Garska's testimony in court.

### E. Other Matters

Two other matters require attention. First, to accommodate a conflict in the court's trial schedule, I am changing the start date of the trial (and the final pretrial conference) to August 1, 2016. All the pretrial deadlines remain the same.

Second, the bureau has complied with the court's request to submit in camera an unredacted copy of defendant Schwersenska's time records for November 2013. Dkt. ##99, 101 and 102. The bureau had submitted a copy of the document to plaintiff earlier, but the bureau redacted "accounting codes," which would identify the department in which Schwersenska was working. Plaintiff believed that the accounting codes could show that Schwersenska was not working in food services on November 12, 2013 and that defendant Warnke is fabricating a conversation he says he had with Schwersenska about plaintiff that day. Plaintiff asked the court to review the time records in camera to determine whether the codes reveal any relevant information. Having reviewed the unredacted documents, I can confirm that they reflect that Schwersenska was working in food services and no other

department during the relevant pay period.

ORDER

IT IS ORDERED that

1. Plaintiff Christopher Atkinson's petition for a writ of habeas corpus ad testificandum with respect to Gregg Vandyke, dkt. #91, two requests for the issuance of a supoena duces tecum under Fed. R. Civ. P. 45, dkt. #98 and 106, and request for a subpoena to compel Kevin Garska to testify, dkt. #115, are DENIED.

2. The motion for leave to file a surreply brief filed by defendants Joseph Warnke, Crystal Schwersenska and Felipa Mackinnon, dkt. #120, is DENIED as moot.

3. The final pretrial conference and trial are RESCHEDULED for August 1, 2016, at 8:30 a.m. The clerk of court is directed to prepare an amended writ of habeas corpus ad testificandum for plaintiff.

Entered this 24th day of June, 2016.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge